UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATRIZ ALICIA CURIEL, | Case No.  1:22-cv-00486-EPG |
| Plaintiff, | FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 1, 17). |
| Defendant. | |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for Supplemental Security Income. (ECF No. 1). The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 10).

Plaintiff presents the following issue:

1.     The ALJ failed to meet his Step Five burden to prove Plaintiff can perform other work that exists in significant numbers in the national economy.

(ECF No. 17, p. 10).

Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.  ANALYSIS

Plaintiff's sole challenge to the ALJ's final disability determination is that the ALJ erred by relying on the Vocational Expert's (VE) testimony in finding at Step Five that Plaintiff could perform the job of marker despite Plaintiff's limitations. (ECF No. 17, pp. 10-11). Specifically, Plaintiff contends that the Temperament factor "T" listed in the *Dictionary of Occupational Titles* ["DOT"] description of marker, which states that the job entails "[a]ttaining precise set limits, TOLERANCES, and standards," conflicts with the RFC's requirement that Plaintiff be precluded from "fast-paced production requirements." When the marker job position is eliminated from the ALJ's Step Five finding, the only other job identified by the ALJ is that of cleaner, for which there are 7, 770 jobs available in the national economy. As 7,700 is not a "significant number" of jobs, Plaintiff argues that the ALJ's Step Five finding is not supported by substantial evidence and the ALJ's decision must be remanded for further administrative proceedings.[1]

The Commissioner mainly argues that there is no "apparent or obvious" conflict between the VE's testimony and the DOT marker description because the RFC finding only precluded "fast-paced production requirements" and the Temperament factor speaks to the level of precision required to price and label items, i.e., the primary task of the marker position.[2] (ECF No. 18, p. 9).

---

[1] The Commissioner concedes that if the marker job were eliminated, then "the ALJ's step five finding would benefit from further administrative proceedings in light of the VE's testimony that the remaining job of cleaner had only 7,700 jobs nationally." (ECF No. 18, p. 7 n.5) (internal citations omitted).

[2] The Commissioner also argues that Plaintiff waived her challenge to the ALJ's Step Five finding by failing to raise this conflict at the hearing before the ALJ or with the Appeals Council. (ECF No. 18, p. 7). This argument is unavailing. "[A]n ALJ is required to investigate and resolve any apparent conflict between the VE's testimony and the DOT, regardless of whether a claimant raises the conflict before the agency." *Shaibi v. Berryhill*, 883 F.3d 1102, 1109-10 (9th Cir. 2017). In *Shaibi*, the claimant sought to challenge the ALJ's Step Five determination, specifically the ALJ's reliance on the VE's testimony regarding the number of relevant jobs in the economy based on new economic data, without first raising the supposedly-conflicting data with the ALJ or the Appeals Council. *Id.* Relying on *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999), the Ninth Circuit held that because the ALJ was in the best position to "weigh conflicting evidence" regarding the job estimates presented by the VE, the claimant forfeited judicial review of the issue by not "suggest[ing] that the VE's job esitmates might be unrealiable at any point during the proceedings." *Id.* at 11. The *Shaibi* court specifically noted that this holding "encompasses challenges based on the alleged conflict with alternative job numbers gleaned from the CPH or the OOH." *Id.* at 1109. Similarly, *Meanel* addressed new evidence presented for the first time during judicial review regarding job number statistics. 172 F.3d at 1115. Here, Plaintiff's argument is not based on new evidence regarding the number of marker jobs available in the national economy. The issue presented by Plaintiff's Step Five challenge is whether the ALJ failed to resolve any conflicts between the DOT description of the marker job and the VE testimony that Plaintiff could perform the marker job despite her limitations. Accordingly, Plaintiff has not waived this issue.

1    At step five, the ALJ must determine whether there are jobs available for the claimant in

2 the national economy considering the claimant's age, education, work experience, and residual

3 functional capacity. *See* 20 C.F.R. § 416.920(a)(4)(v). Specifically, the burden shifts to the

4 agency to prove that "the claimant can perform a significant number of other jobs in the national

5 economy." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002). To meet this burden, the ALJ

6 may consider testimony from a vocational expert regarding the jobs a claimant can perform

7 despite their limitations. *Gutierrez v. Colvin*, 844 F.3d 804, 806-7 (9th Cir. 2016) (citing *Hill v.

8 Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012)). "The *Dictionary of Occupational Titles*, a resource

9 compiled by the Department of Labor that details the specific requirements for different

10 occupations, guides [this] analysis." *Gutierrez*, 844 F.3d at 807. The Ninth Circuit has held that

11 "[w]hen there is an apparent conflict between the vocational expert's testimony and the DOT—

12 for example, expert testimony that a claimant can perform an occupation involving DOT

13 requirements that appear more than the claimant can handle—the ALJ is required to reconcile the

14 inconsistency." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015); *see also Gutierrez*, 844 F.3d

at 807 (citing SSR 00-4P, 2000 WL 1898704, at \*2 (2000)). Further,

15
> For a difference between an expert's testimony and the *Dictionary's* listings to be
16 > fairly characterized as a conflict, it must be obvious or apparent. This means that
> the testimony must be at odds with the *Dictionary's* listing of job requirements that
17 > are essential, integral, or expected. This is not to say that ALJs are free to
> disregard the *Dictionary's* definitions or take them with a grain of salt—they
18 > aren't. But tasks that aren't essential, integral, or expected parts of a job are less
> likely to qualify as apparent conflicts that the ALJ must ask about. Likewise,
19 > where the job itself is a familiar one—like cashiering—less scrutiny by the ALJ is
> required.
20
*Gutierrez*, 844 F.3d at 808. "The requirement for an ALJ to ask follow up questions is fact-
21
dependent, and the more obscure the job, the less likely common experience will dictate the
22
result." *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017) (citing *Gutierrez*, 844 F.3d at
23
808) (internal quotation marks omitted).
24
   The Court must affirm the Commissioner's decision if it is based on proper legal
25
standards and the findings are supported by substantial evidence in the record. 42 U.S.C. §
26
405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004); *Coleman v.
27
Saul,* 979 F.3d 751, 755 (9th Cir. 2020) ("Substantial evidence means more than a mere scintilla
28

1    but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

2    adequate to support a conclusion.").

3          Here, the DOT description for the marker job position does not appear to include "fast

4    paced production requirements," as precluded by Plaintiff's RFC. Per the DOT, a marker's

5    essential duties may include  "[m]ark[ing] and attach[ing] price tickets to articles of merchandise

6    to record price and identifying information," "record[ing] number and types of articles marked

7    and pack[ing] them in boxes," "compar[ing] printed price tickets with entries on purchase order to

8    verify accuracy and notify supervisor of discrepancies," and "print[ing] information on tickets,

9    using ticket-printing machine." DICOT 209.587-034, 1991 WL 671802. Nor does the *Revised*

10   *Handbook for Analyzing Jobs* description cited by Plaintiff indicate that "fast paced" production

11   is an expected element of jobs requiring the temperament factor "T."

12         The Temperament factor "T" stands for "attaining precise set limits, tolerances, and

13   standards" and "[i]nvolves adhering to and achieving exact levels of performance, using precision

14   measuring instruments, tools, and machines to attain precise dimension; preparing exact verbal

15   and numerical records; and complying with precise instruments and specifications for materials,

16   methods, procedures, and techniques to attain specific standards." U.S. Dept't of Labor, *Revised*

17   *Handbook for Analyzing Jobs*, 10-4 (1991). Plaintiff contends that the Temperament "T" factor

18   has been "interpreted as barring-fast paced or production-quota work." (ECF No. 17, p. 12 (citing

19   *Sandra H. v. Comm'r of Soc. Sec.*, No.: 2:17-CV-403-FVS, 2019 WL 289811, at *7 (E.D. Wash.

20   Jan. 22, 2019); *Ryan Patrick A. v. Berryhill*, No. EDCV 17-2526-JPR, 2019 WL 1383800 (C.D.

21   Cal. Mar. 27, 2019)). However, a review of these cases does not support this assertion. *See Mary*

22   *Denise B. v. Kijakazi*, No. 2:21-cv-00132-LRS, 2022 WL 4394546 at *4 (E.D. Wash. Sept. 22,

23   2022). As the district court discussed in *Mary Denise B.*:

> Plaintiff does not address the definition of the "T" code but relies on two
> unreported district court cases in asserting the "T" code conflicts with a limitation
> to no fast-paced or production-quota work. ECF No. 15 at 9, ECF No. 17 at 6. In
> *Sandra H. v. Comm'r of Soc. Sec.*, a similar issue was before the court, but no
> finding regarding the meaning of "attaining precise set limits, tolerances, and
> standards" was made because two other jobs were available for which the "T"
> code was not applicable. No. 2:17-CV-403-FVS, 2019 WL 289811, at *7 (E.D.
> Wash. Jan. 22, 2019). In *Ryan Patrick A. v. Berryhill*, the court in dicta cited
> *Sandra H.* for the proposition that attaining precise set limits, tolerances, and
> standards "has been interpreted as barring fast-paced or production-quota work"

1  and "would conflict with an RFC barring fast-paced or production-quota work."

2  No. EDCV 17-2526-JPR, 2019 WL 1383800, at *6 (C.D. Cal. Mar. 27, 2019).
   However, the *Sandra H.* court made no finding or conclusion to that effect.

3  2022 WL 4394546 at *4.

4  Moreover, as the Commissioner notes, the ALJ addressed whether Plaintiff's pace

5  limitations conflicted with the DOT description by asking the VE whether there were any

6  "customary tolerances for how much time during an eight-hour workday a typical employee

7  would permit an employee to be off task in addition to regularly scheduled breaks." (A.R. 54).

8  The VE testified that the marker and cleaner jobs could only tolerate an employee who was off

9  task less than 10% of the time during an eight-hour workday. (*Id.*).

10  The Court finds that the RFC's limitation barring fast paced production work is not

11  inconsistent with the DOT description for the marker job identified by the VE. Accordingly, the

12  ALJ did not err at Step Five by failing to resolve any conflict between the VE's testimony and the

13  DOT regarding the marker job.

## II.  CONCLUSION AND ORDER

14  Based on the above reasons, the decision of the Commissioner of Social Security is

15  AFFIRMED. And the Clerk of the Court is directed to close this case.

16

17  IT IS SO ORDERED.

18      Dated:   **June 27, 2023**                          /s/ Erica P. Grosjean

19                                                    UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28